UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | SACV 26-00361-KK-DTBx | Date: | February 23, 2026 |
|---|---|---|---|

Title: *Ivette Alonso Martinez v. Kristi Noem et al.*

Present: The Honorable KENLY KIYA KATO, UNITED STATES DISTRICT JUDGE

| Dominique Carr | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** (In Chambers) Order GRANTING Petitioner's Ex Parte Application for Temporary Restraining Order [Dkt. 5]

## I.
## INTRODUCTION

On February 18, 2026, petitioner Ivette Alonso Martinez ("Petitioner"), who is currently detained in the custody of Immigration and Customs Enforcement ("ICE"), filed a Petition for Writ of Habeas Corpus ("Petition") against respondents Kristi Noem, Pamela Bondi, Todd Lyons, Ernesto Santacruz Jr., Fereti Semaia, the U.S. Department of Homeland Security ("DHS"), the Executive Office of Immigration Review, and ICE ("Respondents"). ECF Docket No. ("Dkt.") 1, Petition ("Pet."). On February 19, 2026, Petitioner filed the instant Ex Parte Application for Temporary Restraining Order ("Application"), seeking a temporary restraining order ("TRO") to order her immediate release from custody, order Respondents to show cause regarding why a preliminary injunction should not be issued, and enjoin her removal to a third country without due process. Dkt. 5, Application ("App."); dkt. 5-9, at 3.

The Court finds this matter appropriate for resolution without oral argument. See Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. For the reasons set forth below, Petitioner's Application is **GRANTED**.

///

///

///

## II.
## BACKGROUND

### A.   RELEVANT FACTS

As alleged in the Petition, Petitioner was born in Mexico.  Pet. at 2.  Petitioner entered the United States with a tourist visa in August 2019 and was stopped by law enforcement.  Id.  She was questioned, and described "being forced to traffic drugs under the threat of death and murder," by Mexican federal officials.  Id.  Petitioner was subsequently released, and moved to Anaheim, California.  Id.; dkt. 5-2, Declaration of Ivette Alonso Martinez ("Martinez Decl.") ¶ 2.

On August 5, 2019, Petitioner was arrested for drug trafficking, and was ultimately convicted and sentenced to 8 months in prison and 36 months of supervised release.  Id.; dkt. 9, ("Record") at 3-4; Pet. at 2.  While in federal custody, Petitioner was sexually assaulted and raped by a federal corrections officer.  Pet. at 2.

Following completion of her 8-month sentence, Petitioner was taken into immigration custody in Aurora, Colorado where she remained in immigration detention for eighteen months between January 6, 2022 to June 27, 2023.  Id. at 7-8.  During this time, drug traffickers discovered her location and sent death threats to Petitioner's mother in Mexico.  Martinez Decl. ¶ 4.  On April 6, 2023, while detained, Petitioner was granted Deferral of Removal to Mexico under the Convention Against Torture ("CAT") due to Petitioner's fear she and her family would be killed by Mexican drug traffickers.  Dkt. 5-3; Pet. at 2, 7-8; Martinez Decl. ¶ 5.  On June 27, 2023, Petitioner was released on an Order of Supervision ("OSUP").  Dkt. 5-4, at 3-8.

Since her release in 2023, Petitioner has been gainfully employed and has "complied with all the requirements of her OSUP."  Pet. at 2, 8.  Petitioner "rebuilt her life in Anaheim, California" and "worked as a bookkeeper, tax preparer, and caregiver for disabled adults."  Id.  Petitioner has three children and has "provided [] a loving and stable home," and actively volunteers at her children's schools.  Dkt. 5-5, Declaration of Silvia Albayati ("Albayati Decl.") ¶ 3.

Petitioner is now 34 years old and disabled.  Pet. at 7.  She has been diagnosed with post-traumatic stress disorder, anxiety, depression, emotional disorder, a cervical hernia, chronic nerve damage, and joint fluid leakage as a result of trauma.  Id. at 8.  She requires daily life-saving medications.  Id.; Albayati Decl. ¶ 5.

On December 18, 2025, while appearing for a scheduled ICE check-in, Petitioner was detained at the Santa Ana ICE Office "to facilitate her removal to a third country."  Dkt. 5-7, Declaration of Sravya Singampalli ("Singampalli Decl.") ¶ 4.  ICE officials told Petitioner her OSUP terminated that day.  Martinez Decl. ¶ 15.  Petitioner was transported to the Desert State Annex in Adelanto, California ("Adelanto ICE") where she remains.  Id. ¶ 19.

Petitioner's health has declined while detained at Adelanto ICE.  Pet. at 9.  She experiences swelling, lower back pain, chronic headaches, severe neck pain, loss of appetite, inability to concentrate, constant fear, and depression.  Id.  Petitioner has also "verbalized her fear of self-harm" in the last month.  Id.  Petitioner received inadequate care from ICE officials.  Id.  A doctor at Adelanto Ice informed Petitioner "they could not treat [her] for [her] chronic pain."  Martinez Decl. ¶ 24.

Petitioner asserts Adelanto ICE has refused to allow her to communicate with counsel, citing security restrictions and staffing shortages. Singampalli Decl. ¶¶ 4-5, 7. "Respondents provide no mechanism for Petitioner to confidentially speak to her retained counsel," and no appointments have been available through Respondents' scheduling system. App. at 21.

As of February 19, 2026, Respondents have not confirmed which third country they intend to send Petitioner to. Id. at 18-19; Pet. at 23.

B. **PROCEDURAL HISTORY**

On February 18, 2026, Petitioner filed the operative Petition against Respondents, raising the following grounds for relief:

1. **Ground One:** Substantive Due Process Violation of the Fifth Amendment to the U.S. Constitution;
2. **Ground Two:** Right to Counsel Violation of the Fifth Amendment to the U.S. Constitution;
3. **Ground Three:** Removal to a Third Country Violation of the U.S. Constitution and 8 U.S.C. § 1231; and
4. **Ground Four:** Procedural Due Process Violation of the Fifth Amendment to the U.S. Constitution.

Pet. at 14-26.

On February 19, 2026, Petitioner filed the instant Application. First, Petitioner argues ICE has unlawfully detained Petitioner without a significant likelihood of her reasonably foreseeable removal ("Substantive Due Process Claim"). App. at 19. Second, Petitioner argues her detention without a mechanism to confidentially speak with retained counsel violates her Fifth Amendment and statutory right to counsel ("Right to Counsel Claim"). Third, Respondents' policy of removal to third countries violates her Fifth Amendment due process rights ("Third Country Removal Claim"). Finally, Petitioner argues her revocation without notice violated her Fifth Amendment due process rights ("Procedural Due Process Claim"). Id. at 21-31.[1]

On February 23, 2026, Respondents filed an Opposition to Petitioner's Application for a TRO, arguing they properly exercised their discretion, and Petitioner received both a notice of re-detention and an informal interview to contest the revocation. Dkt. 8, Opposition ("Opp."), at 2. Respondents include the Notice and notes of an "Alien Informal Interview" in their Opposition. Dkt. 8-1. Respondents separately filed a redacted Federal Bureau of Investigation "record request" for Petitioner. Record at 1-5.

This matter, thus, stands submitted.

///

---

[1] Because the Court finds Petitioner has satisfied the TRO standard for her Procedural Due Process Claim and Third Country Removal Claim, the Court need not discuss the remaining arguments.

# III.
# LEGAL STANDARD

The standard for issuing a TRO is identical to the standard for issuing a preliminary injunction. See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 n.7 (9th Cir. 2001). Under Federal Rule of Civil Procedure 65, the Court may grant a TRO to prevent "immediate and irreparable injury." Fed. R. Civ. P. 65(b)(1). Like a preliminary injunction, a TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008).

The party seeking such relief must establish: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm absent preliminary relief; (3) the balance of equities weighs in its favor; and (4) the injunction is in the public interest ("Winter factors"). See id. at 20. Courts in the Ninth Circuit also employ "an alternative 'serious questions' standard, also known as the 'sliding scale' variant of the Winter standard." Fraihat v. U.S. Immigr. & Customs Enf't, 16 F.4th 613, 635 (9th Cir. 2021) (citation modified). Under the serious questions standard, the four Winter elements are "balanced, so that a stronger showing of one element may offset a weaker showing of another." All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011). Thus, a TRO may be warranted where there are "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff," and so long as the other Winter factors are also met. Id. at 1132.

# IV.
# THE WINTER FACTORS WEIGH IN FAVOR OF GRANTING THE TEMPORARY RESTRAINING ORDER

## A.   LIKELIHOOD OF SUCCESS ON THE MERITS

The likelihood of success on the merits is the most important Winter factor, which "is especially true for constitutional claims." Junior Sports Mags. Inc. v. Bonta, 80 F.4th 1109, 1115 (9th Cir. 2023) (citing Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012)). Here, the Court finds Petitioner is likely to succeed on the merits or has at least raised "serious questions" regarding the merits of her Procedural Due Process Claim and Third Country Removal Claim.

### 1.   Procedural Due Process Claim

#### a.   Applicable Law

##### i.   Due Process Clause

Under the Due Process Clause, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment . . . lies at the heart of the liberty" protected by the Due Process Clause. Zadvydas v. Davis, 533 U.S. 678, 690 (2001). "[T]he Due Process Clause applies to all 'persons' within the United States," including noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent." Id. at 693. As the Supreme Court recently reaffirmed, the Fifth Amendment "entitles [noncitizens] to due process of law in the context of removal proceedings." A.A.R.P. v. Trump, 605 U.S. 91, 94 (2025) (citation modified) (quoting Trump v. J.G.G., 604 U.S. 670, 673 (2025)).

"Due process is flexible and calls for such procedural protections as the particular situation demands." United States v. Rivera-Valdes, 157 F.4th 978, 991 (9th Cir. 2025) (citation modified) (quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972)).  In general, due process "requires some kind of a hearing before the State deprives a person of liberty or property." Shinault v. Hawks, 782 F.3d 1053, 1058 (9th Cir. 2015) (citation modified) (quoting Zinermon v. Burch, 494 U.S. 113, 127 (1990)).  To determine "whether a pre-deprivation hearing is required and what specific procedures must be employed at that hearing given the particularities of the deprivation," courts apply the three-part balancing test established in Mathews v. Eldridge, 424 U.S. 319 (1976).  Yagman v. Garcetti, 852 F.3d 859, 864 (9th Cir. 2017) (citation modified) (quoting Shinault, 782 F.3d at 1057).  Under the Mathews test, courts consider "(1) the private interest affected; (2) the risk of erroneous deprivation through the procedures used, and the value of additional procedural safeguards; and (3) the government's interest, including the burdens of additional procedural requirements." Mathews, 424 U.S. at 321.

### ii.     OSUP Revocation Procedures

8 U.S.C. § 1231(a) ("Section 1231(a)") governs the detention, release, and removal of noncitizens with an order of removal.  Under Section 1231(a), a noncitizen who has been ordered removed must be detained during the 90-day removal period. 8 U.S.C. §§ 1231(a)(1)(A), 1231(a)(2)(A).  However, if a noncitizen is not removed within this period, they must be released "subject to supervision under regulations prescribed by the Attorney General." Id. § 1231(a)(3).  While certain noncitizens may be detained beyond the 90-day removal period, such noncitizens, if released, must be subject to the same terms of supervision as under Section 1231(a)(3). Id. § 1231(a)(6).

8 C.F.R. §§ 241.4 and 241.13 set the terms of supervised release under Section 1231(a)(3) and 8 U.S.C. § 1231(a)(6) ("Section 1231(a)(6)"), including the conditions and procedures under which ICE may revoke release.  8 C.F.R. §§ 241.4(l), 241.13(i).  First, ICE may revoke release when a noncitizen violates a condition of their OSUP. Id. §§ 241.4(l)(1), 241.13(i)(1).  Second, ICE may revoke release when, "on account of changed circumstances, [ICE] determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." Id. § 241.13(i)(2).  Third, certain officials may exercise their discretion to revoke the release. Id. § 241.4(l)(2).

Upon revocation of release, ICE must provide the noncitizen a copy of the decision "set[ting] forth the reasons for the continued detention." Id. § 241.4(d).  Additionally, the noncitizen must be "notified of the reasons for revocation" and afforded "an initial informal interview promptly . . . to respond to the reasons for revocation stated in the notification." Id. §§ 241.13(i)(3), 241.4(l)(1).

///

///

///

///

      b.      Analysis

            i.      **Due Process Clause**

Here, Petitioner claims Respondents have violated her procedural Due Process rights. App. at 16-20, 21-31. The Court finds Petitioner is likely to succeed on or has at least raised serious questions regarding the merits of this claim.

First, Petitioner has a substantial private interest in remaining out of immigration custody. As a noncitizen residing within the United States, Petitioner is entitled to constitutional due process. Further, as noted, Petitioner was released on an OSUP on June 27, 2023, following an approximately 18-month detention in immigration custody. App. at 8-9. Petitioner's release on supervision gave rise to "the most elemental of liberty interests – the interest in being free from physical detention by one's own government." Hamdi v. Rumsfeld, 542 U.S. 507, 529 (2004); see also Doe v. Becerra, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) ("Governmental actions may create a liberty interest entitled to the protections of the Due Process Clause."). Moreover, the fact Petitioner was previously "held in custody by the government at an earlier time does not eliminate [her] liberty interest in remaining on release." Valencia Zapata v. Kaiser, 801 F. Supp. 3d 919, 932 (N.D. Cal. 2025) (citing Morrissey, 408 U.S. at 482).

Petitioner's release on an OSUP thus contained an "implicit promise that parole will be revoked only if [s]he fails to live up to the parole conditions." Morrissey, 408 U.S. at 482; see also Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody."). For over two years, Petitioner relied on this promise to "form the [] enduring attachments of normal life," such as establishing a family and becoming a caring, involved father. Morrissey, 408 U.S. at 482. Specifically, Petitioner is the primary parent and financial support for her three children and actively volunteers with their schools. Martinez Decl. ¶ 8. The length of Petitioner's release and compliance with OSUP from June 27, 2023 until her re-detention on December 18, 2025 further strengthens her private interest in her continued freedom from immigration detention. See Doe, 787 F. Supp. 3d at 1093 (finding the Government's actions in conditionally allowing the petitioner to live outside immigration custody for five years created a protected liberty interest); Pinchi, 792 F. Supp. 3d at 1034 (finding the more than two years a petitioner lived outside of immigration custody "heightened" her liberty interest). Hence, Petitioner establishes a significant liberty interest in remaining out of immigration custody.

Second, the risk of erroneous deprivation is significant without a pre-detention hearing. Civil immigration detention is "nonpunitive in purpose and effect" and is permissible only to reduce the risk of flight or danger to the community. Zadvydas, 533 U.S. at 690; see also Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2017) ("[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions."). In releasing Petitioner on OSUP in 2023, ICE necessarily determined Petitioner did not pose a significant flight risk or danger to the community. 8 C.F.R. § 241.4(d)(1) (authorizing release on an OSUP where the noncitizen "demonstrates to the satisfaction of the Attorney General or her designee that his or her release will not pose a danger to the community or to the safety of other persons or to property or a significant risk of flight pending such [noncitizen's]

removal from the United States"); see also Sun v. Santacruz, No. EDCV 25-02198-JLS-JCx, 2025 WL 2730235, at *6 (C.D. Cal. Aug. 26, 2025) (noting a noncitizen's previous release on supervision reflects an implicit finding by ICE that the noncitizen "was neither a flight risk nor a danger to the community").

Respondents do not dispute that Petitioner is not a flight risk. App. at 9, 12; see Opp. Indeed, the record suggests otherwise, as Petitioner has reported to ICE at periodic check-ins "about every six months," never missed an appointment, and complied with the terms of her OSUP as directed. Pet. at 8. Finally, as noted, Petitioner has integrated herself into her community where she has built professional skills and "established herself in the financial field." Albayati Decl. ¶¶ 2-3. She has worked as a bookkeeper, tax preparer, and caregiver for disabled adults. Martinez. Decl. ¶¶ 8. Petitioner "has strong tries to her community in Anaheim, and she presents no flight risk or danger." App. at 9. The uncontroverted evidence thus "raises an inference that the government will have difficulty proving by clear and convincing evidence that Petitioner's detention is necessary to prevent danger to the community or his flight." Meneses v. Santacruz, No. CV 25-11206-MCS-PVCx, 2025 WL 3481771, at *4 (C.D. Cal. Dec. 2, 2025). Therefore, without the procedural safeguard of a pre-detention hearing, ICE may, as it appears to have done so here, revoke Petitioner's release and re-detain her "at any time," regardless of whether her detention serves any valid governmental purpose. See Pinchi, 792 F. Supp. 3d at 1035 (finding the risk of erroneous deprivation was significant where neither party "had an opportunity to determine whether there is any valid basis for [the petitioner's] detention"); Sun, 2025 WL 2730235, at *6 (finding "post-detention safeguards are definitionally inappropriate to address the harm complained of here").

Third, Respondents have presented no countervailing interest in re-detaining Petitioner, and the burden of a pre-detention hearing is low. "[A]s many other courts . . . have recognized, there is no meaningful countervailing government interest that supports detaining previously paroled noncitizens like petitioner without a pre-detention hearing." Meneses, 2025 WL 3481771, at *4 (collecting cases). Respondents do not provide a basis to conclude Petitioner poses a flight risk or danger to the community. Thus, Respondents fail to provide any governmental interest in continuing to detain Petitioner. See Pinchi, 792 F. Supp. 3d at 1036 (finding no valid governmental interest where the government identified no changed circumstances regarding the petitioner's dangerousness or flight risk). Further, Respondents do not show a pre-detention hearing imposes a significant financial or administrative burden. To the contrary, custody hearings in immigration court are "routine" and impose only a "minimal" cost. Singh v. Bowen, No. EDCV 25-03034-CAS-PDx, 2025 WL 3251437, at *7 (C.D. Cal. Nov. 21, 2025) (citation modified) (quoting Singh v. Andrews, 803 F. Supp. 3d 1035, 1048 (E.D. Cal. 2025)). This is especially so where, as here, Petitioner has complied with her terms of release. Pet. at 8. Hence, Respondents' interest in Petitioner's continued detention is minimal if not entirely absent. See Pinchi, 792 F. Supp. 3d at 1036.

Hence, the Court finds Petitioner re-detention likely violates her right to procedural due process.

### ii.     OSUP Revocation Procedures

While Respondents contend ICE acted within its authority in revoking Petitioner's OSUP and provided Petitioner with sufficient notice, the Court rejects this argument.

Respondents argue the "Notice of Revocation of Release" and informal interview constituted notice of re-detention. Opp. at 2. Notably, the "Notice of Revocation of Release" was signed on December 18, 2025, the same day of her detention at an ICE check-in, and states re-detention is "based on a review of [her] alien file and a determination that there are changed circumstances in [her] case." Dkt. 8-1, at 1. Neither this notice nor Respondents' Opposition describe the changed circumstances. Moreover, the notes from the "Alien Informal Interview" merely confirm Petitioner was not provided a reason for the revocation of her OSUP and re-detention. Id. at 3. Additionally, the record indicates Petitioner does not understand English and suggests no translator was provided at her interview. App. at 12; dkt 8-1, at 3.

First, while Petitioner was provided the Notice upon the revocation of her release, the Notice fails to "set forth the reasons for the continued detention," 8 C.F.R. § 241.4(d), or notify Petitioner "of the reasons for revocation," id. §§ 241.13(i)(3), 241.4(l)(1). Rather, the Notice merely states the decision to revoke Petitioner's release was "based on a review of [her] official [] file and a determination that there are changed circumstances in [her] case." Dkt. 8-1, at 1. The Notice further states "ICE has determined that it is appropriate to enforce the removal order and remove [Petitioner] to a third country." Id. However, these vague and conclusory assertions do not identify any specific "changed circumstances" or otherwise explain why Petitioner's release is being revoked. Hence, it appears ICE has violated its own regulations in re-detaining Petitioner without providing adequate notice of the grounds for revocation. See, e.g., Esmail v. Noem, No. CV-25- 08325-WLH-RAOx, 2025 WL 3030590, at *5 (C.D. Cal. Sep. 12, 2025) (finding a similar notice was "plainly insufficient to convey to Petitioner the grounds for revocation"); Sun, 2025 WL 2800037, at *2 ("A pro forma notice that gives no information on why release is being revoked, beyond simply that Petitioner 'will be taken into custody for the purpose of removal from the United States,' is insufficient." (citation modified)); Perez-Escobar v. Moniz, No. 25-CV-11781-PBS, 2025 WL 2084102, at *2 (D. Mass. July 24, 2025) (finding a similarly vague notice violated ICE's regulations and due process).

Second, Respondents failed to provide adequate notice of the grounds for Plaintiff's re-detention, thus, denying Plaintiff a meaningful "opportunity to respond to the reasons for revocation." 8 C.F.R. §§ 241.13(i)(3), 241.4(l)(1); see also Tran v. Noem, No. 3:25-cv-02391-BTM-BLM, 2025 WL 3005347, at *3 (S.D. Cal. Oct. 27, 2025) ("In the stressful context of an [] arrest and revocation of release, in order to give effectual notice of the reasons for renewed detention, due process requires written notice so that the [noncitizen] can prepare for the post deprivation informal interview."). Moreover, the record indicates Petitioner does not understand English, and neither translated documents nor an interpreter were provided. App. at 12; dkt 8-1, at 3. Hence, it again appears ICE has violated its own regulations in re-detaining Petitioner without providing her a meaningful opportunity to contest the revocation of her release.

By failing to notify Petitioner of the reasons for the revocation of her release or provide Petitioner an opportunity to contest those reasons, ICE "thwart[ed]" her ability to challenge her re-detention. Santamaria Orellana, 2025 WL 2444087, at *6. Thus, the Court finds Petitioner is likely to succeed on her claim that the revocation of her release violates the Due Process Clause. See, e.g., Delkash v. Noem, EDCV 25-01675-HDV-AGRx, 2025 WL 2683988, at *6 (C.D. Cal. Aug. 28, 2025) ("These procedures are not optional or discretionary; they must be followed, and failure to do so renders the detention unlawful."); Phan v. Noem, No. 3:25-CV-02422-RBM-MSB, 2025 WL 2898977, at *3 (S.D. Cal. Oct. 10, 2025) ("ICE failed to comply with the required procedures, thereby violating Petitioner's due process rights.").

Finally, the Court is not persuaded by Respondents' argument the Notice and informal interview constituted notice pursuant to 8 C.F.R. 241.1. Opp. at 2. Even if Section 241.4 grants certain officials broad discretion over revocation, the regulation still requires ICE to provide Petitioner adequate notice and an interview. See Rodriguez v. Hayes, 591 F.3d 1105, 1117 (9th Cir. 2010) (explaining Section 241.4 "provides the detainee some opportunity to respond to the reasons for revocation"); cf. Morton v. Ruiz, 415 U.S. 199, 235 (1974) ("Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures."). Respondents offer no authority to suggest ICE may simply ignore Section 241.4's procedural safeguards in discretionary revocations. See, e.g., Zhu v. Genalo, No. 1:25-CV-06523 (JLR), 2025 WL 2452352, at *7-8 (S.D.N.Y. Aug. 26, 2025) (finding Section 241.4's procedural protections apply to discretionary revocations); Diaz v. Wofford, No. 1:25-CV-01079 JLT EPG, 2025 WL 2581575, at *5 (E.D. Cal. Sep. 5, 2025) (same).

Accordingly, the first and most important Winter factor weighs in favor of Petitioner with respect to her Procedural Due Process Clause Claim.

### 2. Third Country Removal Claim

#### a. Applicable Law

Under the Due Process Clause, "'no person shall be' removed from the United States 'without opportunity, at some time, to be heard.'" A.A.R.P., 605 U.S. at 94 (quoting The Japanese Immigrant Case, 189 U.S. 86, 101 (1903)). "Due process requires notice that is reasonably calculated, under all the circumstances, to apprise interested parties and that affords a reasonable time . . . to make an appearance," including, in the context of immigration detention, "sufficient time and information to reasonably be able to contact counsel, file a petition, and pursue appropriate relief." Id. at 94-95 (citation modified). "Failing to notify individuals who are subject to deportation that they have the right to apply . . . for withholding of deportation to the country to which they will be deported violates both INS regulations and the constitutional right to due process." Andriasian v. Immigr. & Naturalization Serv., 180 F.3d 1033, 1041 (9th Cir. 1999); see also Nadari v. Bondi, CV-25-07893-JLS-BFMx, 2025 WL 2934514, at *3 n.2 (C.D. Cal. Sep. 3, 2025) ("Removal without notice and an opportunity to be heard therefore raises serious due process issues.").

#### b. Analysis

Here, Petitioner alleges ICE has begun implementing a policy of removing noncitizens to third countries "without the need for further procedures" if the United States Department of State ("State Department") receives "credible assurances" from those countries that deportees will not be persecuted or tortured. App. at 23-24. If the State Department does not receive such assurances, it will "not affirmatively ask whether the [noncitizen] is afraid of being removed to the country of removal"; rather, the State Department will remove the noncitizen unless the noncitizen "affirmatively state[s] a fear of persecution or torture." Id.

ICE's policy plainly violates the Due Process Clause. Blanket assurances from third countries cannot substitute for Petitioner's due process right to notice and an opportunity to be heard. See Esmail, 2025 WL 3030589, at *7. Additionally, ICE's policy of requiring noncitizens to affirmatively raise a fear of prosecution or torture denies Petitioner her "right to apply . . . for withholding of deportation." Andriasian, 180 F.3d at 1041. Hence, Petitioner is likely to succeed on

the merits or has at least raised serious questions as to her Third Country Removal Claim. See, e.g., Delkash, 2025 WL 2377123, at *1 (granting a TRO on the same grounds); Esmail, 2025 WL 3030589, at *7; Nadari, 2025 WL 2934514, at *4.

Accordingly, the first and most important Winter factor weighs in favor of Petitioner with respect to her Third Country Removal Claim.

### B.　LIKELIHOOD OF IRREPARABLE HARM

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" Hernandez, 872 F.3d at 994 (citation modified) (quoting Melendres, 695 F.3d at 1002). "Deprivation of physical liberty by detention constitutes irreparable harm." Arevalo v. Hennessy, 882 F.3d 763, 767 (9th Cir. 2018) (citing Hernandez, 872 F.3d at 994). Among other harms, immigration detention results in "subpar medical and psychiatric care" for detainees and imposes "economic burdens" and "collateral harms" on the families of detainees. Hernandez, 872 F.3d at 995. "In the absence of an injunction, harms such as these will continue to occur needlessly on a daily basis." Id.

Here, as stated above, Petitioner's release has been improperly revoked, and Petitioner has been unlawfully detained in violation of her constitutional right to due process for close to one month. While re-detained, her traffickers have learned of her location and sent death threats to her mother. Martinez. Decl. ¶ 4. Petitioner has been unable to schedule confidential calls with her attorneys at Adelanto ICE. Id. ¶ 19. She has been "very sick" while detained and has not been able to take daily medication required for her mental health illnesses. Id. ¶ 21. Her health and wellbeing have worsened, she has chronic headaches, severe neck pain, and has not been able to get access to her prescribed medication. Id. ¶¶ 22-24. Moreover, on January 9, 2026, a doctor at Adelanto ICE informed Petitioner she could not receive treatment for her chronic pain. Id. ¶ 24. Further, Petitioner will suffer "patently obvious" irreparable harm if he is removed to a third country without notice and an opportunity to be heard. Nadari, 2025 WL 2934514, at *2. Hence, Petitioner and her family are – and will continue to be – irreparably harmed absent relief from this Court.

Accordingly, the second Winter factor weighs in favor of Petitioner.

### C.　BALANCE OF EQUITIES AND PUBLIC INTEREST

The final two Winter factors "merge when the Government is the opposing party." Nken v. Holder, 556 U.S. 418, 435 (2009). The Ninth Circuit has recognized "neither equity nor the public's interest are furthered by allowing violations of federal law to continue." Galvez v. Jaddou, 52 F.4th 821, 832 (9th Cir. 2022) (affirming the balance of hardships weighed in favor of plaintiffs alleging the government violated the INA). Specifically, in cases involving removal, "there is a public interest in preventing [noncitizens] from being wrongfully removed." Nken, 556 U.S. at 436.

Here, because Petitioner has demonstrated a likelihood of success on her constitutional claims, the balance of equities and public interest "tip[] sharply" in her favor. All. for the Wild Rockies, 632 F.3d at 1135. Moreover, Respondents' interest in enforcing immigration laws is not compelling because "our system does not permit agencies to act unlawfully even in pursuit of desirable ends." Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs., 594 U.S. 758, 766 (2021) (citing Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 582, 585-86 (1952)); see also Cmty.

Legal Servs. in E. Palo Alto v. U.S. Dep't of Health & Hum. Servs., 777 F. Supp. 3d 1039, 1045-46 (N.D. Cal. 2025), appeal dismissed, No. 25-2358, 2025 WL 1189827 (9th Cir. Apr. 18, 2025) ("[C]ourts regularly find that '[t]here is generally no public interest in the perpetuation of unlawful agency action.'" (quoting League of Women Voters of U.S. v. Newby, 838 F.3d 1, 12 (D.C. Cir. 2016))). Faced with "a conflict between [administrative] concerns and preventable human suffering, [the Court has] little difficulty concluding that the balance of hardships tips decidedly in [Petitioner's] favor." Hernandez, 872 F.3d at 996.

   Accordingly, the third and fourth Winter factors weigh in favor of Petitioner.

* * *

   Thus, because all four Winter factors weigh in favor of Petitioner, Petitioner is entitled to injunctive relief in the form of immediate release from immigration custody. As discussed above, Petitioner continues to suffer irreparable harm so long as she remains unlawfully re-detained. See Esmail, 2025 WL 3030590, at *6 ("Providing Petitioner an interview ex post facto, while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process."). Further, Petitioner's release is necessary to return her to the status quo, which is "the last uncontested status which preceded the pending controversy." Flathead-Lolo-Bitterroot Citizen Task Force v. Montana, 98 F.4th 1180, 1191 (9th Cir. 2024) (citation modified) (quoting GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000)). Here, the last uncontested status is Petitioner's release on supervision before her current re-detention. See Domingo-Ros v. Archambeault, No. 25-CV-1208-DMS-DEB, 2025 WL 1425558, at *2 (S.D. Cal. May 18, 2025) ("Petitioners seek a prohibitory injunction because they seek to preserve the status quo preceding this litigation—their physical presence in the United States free from detention.").

   Accordingly, Petitioner's release from custody is the appropriate remedy.

///

///

///

///

///

///

///

///

///

///

# V.
# CONCLUSION

For the reasons set forth above, the Court orders as follows:

1. Petitioner's Application is **GRANTED**;[2]
2. Respondents are **ORDERED** to immediately release Petitioner from their custody;
3. Respondents are **ENJOINED** from re-detaining Petitioner without providing her a pre-detention hearing before a neutral decisionmaker where Respondents bear the burden of demonstrating by clear and convincing evidence that Petitioner is a flight risk or a danger such that her physical custody is required;
4. Respondents are **ENJOINED** from removing Petitioner to a third country without notice or the opportunity to challenge the removal;
5. Respondents are **ORDERED** to file a status report no later than February 25, 2026, regarding their compliance with this Order; and
6. Respondents are **ORDERED TO SHOW CAUSE** in writing **no later than seven (7) days from the date of this Order** why the Court should not issue a preliminary injunction.  Petitioner may file a Reply **no later than ten (10) days from the date of this Order**.

Failure to comply with this Order will result in sanctions.

**IT IS SO ORDERED**.

---

[2] Federal Rule of Civil Procedure 65(c) permits a court to grant injunctive relief "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court 'with discretion as to the amount of security required, if any.'" Johnson v. Couturier, 572 F.3d 1067, 1086 (9th Cir. 2009) (emphasis removed) (quoting Jorgensen v. Cassiday, 320 F.3d 906, 919 (9th Cir. 2003)).  Here, it is unlikely Respondents will incur any significant costs, and requiring a bond "would have a negative impact on plaintiff's constitutional rights, as well as the constitutional rights of other members of the public." Baca v. Moreno Valley Unified Sch. Dist., 936 F. Supp. 719, 738 (C.D. Cal. 1996).  Accordingly, the Court waives the bond requirement.